IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 25-386 |
| | : | |
| MATTHEW LAISS | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT
<u>PURSUANT TO GRANT OF PRESIDENTIAL PARDON</u>**

Defendant Matthew Laiss respectfully submits this Memorandum of Law in further support of his Motion to Dismiss the Indictment Pursuant to Grant of Presidential Pardon and to specifically counter several assertions and arguments raised in the Government's Response in Opposition to Defendant's Motion to Dismiss.

The government's Response to Mr. Laiss's Motion to Dismiss offers no persuasive basis for the Court to deny it.  It relies on purposeful disregard of significant portions of the Pardon Proclamation, the adoption of a revisionist historical account of the events surrounding the 2020 election, and opinion, rather than requisite proof that the President did not intend to pardon Mr. Laiss.  In fact, the plain language of the pardon applies to Mr. Laiss's alleged criminal conduct. The expressly non-exhaustive list of pardon recipients includes individuals who, like Mr. Laiss, have been accused by our government of (and, in some cases, found by courts to have committed) fraud related to the 2020 election.  And to date, despite the government's claim that "in the view of the executive branch, Laiss is not covered by President Trump's November 7 pardon proclamation"—a conclusion based upon an unreasonable interpretation of its text— President Trump has not issued a clarifying proclamation excluding Mr. Laiss and similarly

situated individuals as is custom in these rare situations.  As such, dismissal of the indictment in Mr. Laiss's case is warranted.

I. **THE PLAIN LANGUAGE OF THE PARDON PROCLAMATION EXTENDS ITS PROTECTION TO MR. LAISS, AND THE GOVERNMENT'S INTERPRETATION TO THE CONTRARY IS UNREASONABLE AND THUS SHOULD NOT BE AFFORDED DEFERENCE.**

By its terms, the plain and unambiguous language of the November 7 Pardon Proclamation applies to voting for the Office of the President in the 2020 Presidential Election. Yet the government asserts that it does not apply to Mr. Laiss's casting of two votes for President Trump[1] in the 2020 general election and instead only extends to "people whose stated purpose was to expose and rectify fraud in the counting of votes in the 2020 election by presenting to Congress alternate slates of electors in states where those individuals believed such fraud may have occurred." Gov't Resp. 1.  This interpretation is unreasonable because it ignores the text of the pardon; therefore, it is not entitled to deference.

A. The Plain Language of the Pardon Proclamation

Where a dispute regarding the scope of a Presidential pardon comes before a court, the text of the pardon order governs judicial review.  *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020) (citing Antonin Scalia & Bryan A. Garner, *Reading Law:  The Interpretation of Legal Texts* § 2, 66 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.")); *see also Browder v. United States*, 312 U.S. 335, 338 (1941) ("No single argument has more weight in statutory interpretation" than plain meaning of words of legal text).  When the language of a pardon is plain, "'the sole function of

---

[1] Curiously, the government remarks in its Response that Mr. Laiss "claims he voted twice for President Trump, which of course is unverifiable[.]"  Gov't Resp. 6 n.1.  In fact, when he was interviewed by FBI agents on September 17, 2024, the agents asked him who he voted for, and he honestly responded, just as he was honest about having cast two ballots.  A copy of this audio-recorded interview, which Mr. Laiss anticipates will be introduced by the government should the case proceed to trial, is attached hereto as Exhibit A for the Court's review.

the court[] is to enforce it according to its terms.'" *United States v. Wilson*, 2025 U.S. Dist. LEXIS 66399, at *10 (D.D.C. Mar. 13, 2025) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). In other words, "[so] long as the language of a pardon is clear and unambiguous"—that "'there is only one reasonable construction of [it]'"—"courts interpret the pardon according to its plain and ordinary meaning" and "'ha[ve] no business deferring to any other reading, no matter how much the [government] insists it would make more sense.'" *Id.* at *10-11 (quoting *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019)).

The terms of the Pardon Proclamation are clear and unambiguous:

> It "grant[s] a full, complete, and unconditional pardon to all United States citizens for conduct relating to the advice, creation, organization, execution, submission, support, voting, activities, participation in, or advocacy for or of any slate or proposed slate of Presidential electors, whether or not recognized by any State or State official, in connection with the 2020 Presidential Election, as well for any conduct relating to their efforts to expose voting fraud and vulnerabilities in the 2020 Presidential Election." Def. Mot. to Dismiss Ex. A, p. 1.

The Pardon Proclamation then states it "includes, but is not limited to" 77 named individuals and "does not apply to the President of the United States, Donald J. Trump." *Id.* at 1-4. For "conduct" to fall within the pardon's scope, it must be "relat[ed] to" at least one of the actions specified in the exhaustive list, and that specified action must have been "for or of any slate or proposed slate of Presidential electors." *Id.* The conduct must also be tethered to a specific event—the 2020 Presidential Election—but is not temporally or locationally limited. *Compare id. with United States v. Kelley*, 2025 U.S. Dist. LEXIS 42740, at *8 (E.D. Tenn. Mar. 10, 2025) (holding language in President Trump's pardon that "individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021" indicates pardon "is primarily constrained by temporal and spatial parameters as defined by the date and location of 'events.'").

Mr. Laiss submits that the clearest and most unambiguous term in the actions list that applies to him is "voting." And because "voting" is listed among a series of other actions ultimately connected by the disjunctive "or," the Court need only find that Mr. Laiss engaged in conduct relating to voting for any slate or proposed slate of Presidential electors in connection with the 2020 Presidential Election to satisfy the conduct requirement. Scalia & Garner, *Reading Law* § 12, at 106. Voting is "the activity of choosing someone or something in an election." *Voting*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/voting (last visited Dec. 3, 2025). When Mr. Laiss selected a Presidential candidate on the Pennsylvania mail-in ballot and the in-person Florida ballot, he clearly engaged in conduct relating to the activity of choosing someone in an election.

Also clear and unambiguous is the term "any slate or proposed slate of Presidential electors." In the context of a Presidential Election in the United States, a slate of Presidential electors is a group of electors chosen by a political party to cast their votes for the party's Presidential candidate. *Electoral College: About the Electors*, U.S. National Archives and Records Administration (NARA) (last reviewed Nov. 7, 2024), https://www.archives.gov/electoral-college/electors#:~:text=Each%20State's%20Certificates%20of%20Ascertainment,dedication%20to%20that%20political%20party (last visited Dec. 3, 2025).

The relationship between these two clear and unambiguous terms—"voting" and "slate or proposed slate of Presidential electors"—is determined by the presence of two prepositions connecting the actions list to "slate or proposed slate of Presidential electors": "for" and "of." Def. Mot. to Dismiss Ex. A, p. 1. That is, the pardon applies to "conduct relating to…voting…*for or of* any slate or proposed slate of Presidential electors…in connection with the

4

2020 Presidential Election[.]" *Id.* (emphasis added). Applying the plain and ordinary meaning of "for or of" here, the pardon applies to two groups of people who engaged in conduct relating to voting: (1) citizens who voted *for* any slate or proposed slate of Presidential electors in connection with the 2020 Election, which is exactly what Mr. Laiss did when he submitted the ballots in Pennsylvania and Florida; and (2) the slates or proposed slates of Presidential electors who voted (i.e. the voting *of* any slate or proposed slate) in connection with the 2020 election, which includes the "contingent slates" of "Trump electors [who] met and cast their votes for President Donald J. Trump[] and transmitted the results to Congress" whom the government refers to as "alternate slates of electors" in its Response. *See* Ed Martin, *Final Pardon Statement of U.S. Pardon Attorney Edward R. Martin Jr. on the Comprehensive Pardons for Contingent Electors and Affiliates*, 4, https://www.scribd.com/document/946369792/Mr-Ed-Martin-s-Statement-on-Alternative-Elector-Pardon (last visited Dec. 3, 2025); Gov't Resp. 1, 9.

      Tellingly, the government does not even attempt an analysis of the plain meaning of this controlling language found in the second paragraph of the pardon order. *See* Gov't Resp. 7-9. Instead, it ignores that portion of the text altogether, focusing only on the final clause of the second paragraph, which states, "as well for any conduct relating to their efforts to expose voting fraud and vulnerabilities in the 2020 Presidential Election." Def. Mot. to Dismiss Ex. A, p. 1. Specifically, the government asserts that "[t]he pardon [] repeats that its beneficiaries are those who engaged in 'conduct relating to their efforts to *expose* voting fraud and vulnerabilities in the 2020 Presidential Election'" without any reference to the portion of the text directly preceding it, which identifies additional beneficiaries vis-à-vis additional conduct. Gov't Resp. 8. This assertion is false in that the pardon does not repeat this provision, and it contravenes the surplusage canon of textual interpretation that:

5

> If possible, every word and every provision is to be given effect []. None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.

Scalia & Garner, *Reading Law* § 26, at 485.

The government's focus on the title and preamble of the pardon to support its conclusion that the plain language of the Pardon Proclamation "makes clear" that Mr. Laiss's conduct is not covered is also unsound. *See* Gov't Resp. 7-8. Indeed, the title—"Granting Pardons for Certain Offenses Related to the 2020 Presidential Election"—makes clear that there exist offenses related to the election that are not covered, but it does nothing to clarify whether Mr. Laiss's alleged offense is one of those "certain offenses." Again, it is the text of the actual grant in the second paragraph, which the government ignores, that provides the clear and unambiguous pardon of Mr. Laiss. *See* Def. Mot. to Dismiss Ex. A, p. 1.

As for the preamble, the government's interpretation of it completely misses the mark. It reads:

> This proclamation ends a grave national injustice perpetuated upon the American people following the 2020 Presidential Election and continues the process of national reconciliation.

*Id.*

The government incorrectly posits that this language "plainly is not aimed at offenses committed *during* the election itself" because it "focuses on the very well-known dispute that occurred in the counting of votes *following* the election, when President Trump and others maintained that fraudulent counting of votes led to the declaration of his opponent's victory in numerous states, [and] [i]n the course of that dispute, individuals created alternate slates of electors supporting the Republican candidates that they wished to submit to Congress on behalf of those states." Gov't Resp. 7-8. "A grave injustice perpetuated upon the American people" is

an ambiguous phrase that is not further defined in the pardon. Def. Mot. to Dismiss Ex. A, p. 1. But that the Pardon Proclamation purports to "end" that grave injustice necessarily implies that the grave injustice President Trump is referring to is certainly not, to his mind, what he and others did following the election. If he viewed the post-election actions of the 77 named beneficiaries, for example, as "a grave injustice perpetuated upon the American people," it stands to reason that he would not pardon them. More likely, the "grave injustice perpetuated upon the American people following the 2020 Presidential Election," in the President's view, is, collectively, the prosecutions, disbarments, investigations, and other accountability efforts aimed at him and his supporters following the election. *See* Martin, *Final Pardon Statement of U.S. Pardon Attorney*, 8 (declaring "prosecutions and persecutions of President Trump and far too many others, to include his attorneys, electors *and supporters, as well as Americans across the country*" as "a very dark chapter in our history"; "pardon recognizing the complete exoneration of the contingent electors *and all who have been swept into this unjust vendetta against President Trump* is appropriate and fully serves the interests of justice") (emphasis added). In short, the government cannot credibly assert that the Pardon Proclamation's preamble plainly restricts pardoned conduct to that which occurred after the election.

> **B.** **The government's interpretation of the Pardon Proclamation is unreasonable because it is unsupported by its text; therefore, its interpretation should not be afforded deference.**

As detailed above, the Court need not defer to the government's interpretation of the Pardon Proclamation, because its text is clear and unambiguous. *Wilson*, 2025 U.S. Dist. LEXIS 66399, at *16. "But even if the language of the pardon were ambiguous, the Court [sh]ould not accord deference to the [government's] [] interpretation because it is unreasonable and does not reflect its fair and considered judgment." *Id.*

7

First, the government's contention that the pardon's "beneficiaries are those who engaged in 'conduct relating to their efforts to *expose* voting fraud and vulnerabilities in the 2020 Presidential Election' (emphasis added)[]" too narrowly construes the group of people pardoned by ignoring the rest of the pardoned conduct explicitly referenced in the text. To suggest the only beneficiaries are those who engaged in one of the types of conduct specified while ignoring all the other types of conduct specified contradicts the text and is therefore unreasonable. *See Andrews*, 958 F.3d at 1078 (court "can neither enlarge *nor cabin* the [] order; [it] must evaluate only whether the order supports the [government's interpretation]") (emphasis added).

Second, as detailed above, the government's interpretation of the pardon's preamble defies logic, because the President would not pardon conduct he views as "a grave injustice" in an effort to "end" that injustice; thus, that interpretation is likewise unreasonable and therefore earns no deference.

Finally, as the government aptly points out, "an enactment should not be interpreted to produce an absurd result." Gov't Resp. 9 (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.")). The purpose of the sweeping Pardon Proclamation is to "end[] a grave national injustice perpetuated upon the American people following the 2020 Presidential Election and continue[] the process of national reconciliation" by pardoning unnamed citizens for their "conduct relating to[, among other actions,] voting…for [] any slate or proposed slate of Presidential electors…in connection with the 2020 Presidential Election," Def. Mot. to Dismiss Ex. A, p. 1, as well as 77 named individuals who, collectively, have been accused of committing various fraudulent acts in an effort to overturn the election results. *See, e.g.,* Ariana Figueroa, *Here's the List of Newly*

8

*Pardoned Trump Fake Electors, Other Allies*, Ohio Capital Journal (Nov. 11, 2025), https://ohiocapitaljournal.com/2025/11/11/repub/heres-the-list-of-newly-pardoned-trump-fake-electors-other-allies/ (last visited Dec. 4, 2025) (noting alleged fraudulent acts of each); Kyle Cheney, *California Court Upholds John Eastman's Disbarment for Role in Trump 2020 Plot*, Politico (June 17, 2025), https://www.politico.com/news/2025/06/17/california-court-john-eastman-disbarment-00411266 (last visited Dec. 4, 2025) (discussing California court's recommendation of suspension of attorney John Eastman's law license because he "push[ed] a false narrative in the courtroom, in the White House, and in the media [that] resulted in the undermining of the country's electoral process[.]"); *Final Report: Select Committee to Investigate the January 6th Attack on the United States Capitol*, 117th Congress Second Session House Report 117-663, pp. 195-402 (Dec. 22, 2022) (available at https://www.govinfo.gov/content/pkg/GPO-J6-REPORT/pdf/GPO-J6-REPORT.pdf) (detailing fraud perpetuated by Rudy Giuliani, Kenneth Chesebro, and others and efforts of "fake electors" to fraudulently overturn the 2020 election results).

The government's claim that "[t]here is no one on the list [of the 77 named pardon beneficiaries] who engaged in any alleged fraud in the voting itself, such as Laiss, *or any remotely comparable conduct*" is absurd. Gov't Resp. 9 (emphasis added). Interpreting the pardon, which by its plain language covers Mr. Laiss's alleged crimes, to exclude him, while it explicitly pardons dozens of named individuals for far more egregious alleged fraud conduct would produce absurd results which this Court need not abide.

**II. THE GOVERNMENT HAS NOT PROFFERED ANY EVIDENCE THAT PRESIDENT TRUMP INTENDED TO EXCLUDE MR. LAISS FROM THE PARDON PROCLAMATION'S BREADTH.**

The intent of the drafter of a legal text may be useful in determining the text's

9

meaning, *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001); however, President Trump's intent as it relates to whether the Pardon Proclamation extends to Mr. Laiss's alleged criminal conduct remains unclear. "Historically, as here, Presidents have issued broad pardons to cover large groups of similarly situated defendants." *Wilson*, 2025 U.S. Dist. LEXIS 66399, *21-22. "But such broadly-worded pardons clearly define the class of individuals and the types of offenses covered by the pardon." *Id.* at 22 (parenthetical omitted). "And in those rare circumstances in which a pardon has been genuinely susceptible to multiple readings, Presidents have issued clarifying proclamations." *Id.*

To date, President Trump has issued no such clarifying proclamation despite widespread, ongoing national reporting on this matter and the unresolved Motion to Dismiss, which has been brought to Pardon Attorney Ed Martin's attention. *See, e.g.* Kyle Cheney, Ben Johansen, Sophia Cai & Irie Sentner, *Trump's Unprecedented Pardon* (Dec. 4, 2025), https://www.politico.com/newsletters/west-wing-playbook-remaking-government/2025/12/04/trumps-unprecedented-pardon-00677665 (last visited Dec. 5, 2025) (noting some pardon experts believe pardon's language is so vague and limitless that it could apply to thousands of people). "Nor has the President, or anyone else connected with the pardon drafting process, provided a declaration or other clear expression of [the President's] intent." *Wilson*, 2025 U.S. Dist. LEXIS 66399, at *23. The government's Response falls exceedingly short in providing the requisite evidence of the President's intent, as "[i]ndividual prosecutors' representations…are not an adequate substitute" for a clarifying proclamation, declaration or testimony of an official involved in the pardon drafting process, or response by the Office of the Pardon Attorney denying the pardon seeker's request for inquiry.[2] And the government has

---

[2] Undersigned counsel emailed a copy of Mr. Laiss's Motion to Dismiss to the Office of the Pardon Attorney's official government email account on November 18, 2025; however, we have not received a response. Even so,

refused to provide undersigned counsel with the communications between the Assistant United States Attorney and higher-ranking DOJ officials, including the Pardon Attorney, referenced in the government's Response.  As such, the President's intent with respect to the Pardon Proclamation's extension to Mr. Laiss's alleged offenses remains entirely unclear.

### III.   CONCLUSION

For the reasons detailed herein, Mr. Laiss submits that the plain language of the Pardon Proclamation extends its protections to him, there is insufficient evidence of the President's intent to the contrary, and the government's interpretation of the Pardon Proclamation is unreasonable and would produce an absurd result such that the Court need not afford it deference.  As such, Mr. Laiss respectfully requests that the Court grant his Motion and dismiss the indictment with prejudice.

Respectfully submitted,

/s/ Katrina Young
KATRINA YOUNG
Assistant Federal Defender

/s/ Elizabeth Toplin
ELIZABETH TOPLIN
Assistant Federal Defender

---

there is "no modern precedent—and maybe no historical precedent []—for a president to delegate his pardon power to subordinates on [a pardon] this vaguely worded." Cheney, Johansen, Cai & Sentner, *Trump's Unprecedented Pardon*.

11

## CERTIFICATE OF SERVICE

We, Katrina Young and Elizabeth Toplin, Assistant Federal Defenders, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that we caused a copy of the Reply Memorandum of Law in Support of Defendant's Motion to Dismiss the Indictment Pursuant to Grant of Presidential Pardon to be filed and served electronically through the Eastern District Clerk's Office Electronic Case Filing ("ECF") upon Mark Dubnoff, Assistant United States Attorney, United States Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

*/s/ Katrina Young*
KATRINA YOUNG
Assistant Federal Defender

*/s/ Elizabeth Toplin*
ELIZABETH TOPLIN
Assistant Federal Defender

DATE:  December 5, 2025