**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 5:25-cr-00386 |
| | : | |
| MATTHEW ALAN LAISS | : | |
| Defendant. | : | |

**O P I N I O N**
**Defendant's Motion for Judgment of Acquittal and Motion for New Trial, ECF No. 74 –**
**Denied**

**Joseph F. Leeson, Jr.**                                          **July 14, 2026**
**United States District Judge**

**I.       INTRODUCTION**

A jury convicted Defendant Matthew Laiss of voter fraud under 52 U.S.C. § 20511(2)(B)

and voting more than once in a federal election under 52 U.S.C. § 10307(e). Laiss now brings the

present post-verdict Motion for Judgment of Acquittal, pursuant to Rule 29(c) of the Federal

Rules of Criminal Procedure, or, in the alternative, a Motion for New Trial pursuant to Rule 33

of the Federal Rules of Criminal Procedure. Laiss maintains that the Government failed to prove

the *mens rea* of the offenses beyond a reasonable doubt, and the evidence presented at trial was

insufficient to support his convictions. Laiss argues that the verdict also went against the weight

of the evidence. Laiss also contends that the Court erred by failing to orally reinstruct the jury

following a question. For the following reasons, the Court denies the Motion.

## II.    BACKGROUND

The Government charged Laiss with voter fraud and voting more than once in a federal election. *See* Indictment, ECF No. 1. The Indictment alleged that Laiss cast a fraudulent mail-in ballot in Pennsylvania, voting for the offices of President and Vice President, knowing he was not qualified to vote in Pennsylvania because his primary residence was in Florida, yet he still signed a false declaration that he was qualified to vote in Pennsylvania. *See id.* at 3–4. The Indictment also alleged that Laiss voted twice for the office of President and Vice President, once by mail in Pennsylvania on October 31, 2020, and then in person in Florida on November 3, 2020. *See id.* at 5.

Laiss filed a motion to dismiss the indictment on November 18, 2025. *See* ECF No. 18. Laiss maintained that a November 7, 2025 Presidential Pardon applied to his alleged conduct in this case, and requested that the Court dismiss the indictment. *See generally id.* The Court denied the Motion on January 12, 2026. *See* ECF Nos. 44, 45. The Court did not have jurisdiction to consider Laiss's argument because the Pardon's language required Laiss to apply to the Office of the Pardon Attorney for a certificate of pardon, which Laiss had not done. *See* ECF No. 44 at 7–8.

On December 19, 2025, the Government filed a motion in limine to preclude Laiss from playing most of Laiss's recorded interview with FBI agents (Agent Carmen Dvorak and Agent Sean Ahearn) to the jury. *See* ECF No. 33. The Government presented its designated portions of the transcript. *See id.* at 3–4.[1] The Court granted the motion in limine in part on January 6, 2026, explaining that Laiss could not circumvent the hearsay rules through an overly broad attempt to

---

[1]    The Government's designations included pages 2:3-20; 3:31-41; 5:4-6; 6:7–7:13; 8:18-21; 10:18-26; 10:37-43; 17:24–18:29; 19:22–20:8; 20:39–23:14 (less Laiss's party affiliation at 22:31); and 24:6-12. *See* ECF No. 33; *see also* ECF No. 33-1.

admit evidence under the rule of completeness doctrine. *See* ECF No. 43. The Court required

Laiss to inform the Government of specific portions of the transcript he sought to introduce. *See*

*id.* After Laiss provided such designations, and the Government agreed with including many of

the designations, but disagreed with other designations, *see generally* ECF No. 46, the Court

denied the request to admit the unresolved counter-designations on January 15, 2026. *See* ECF

No. 50.

Laiss's jury trial began on March 2, 2026. The trial lasted three days, wherein the

Government introduced numerous exhibits, which the Court admitted.

First, the Government introduced Laiss's voting history in Pennsylvania. The

Government presented Laiss's mail-in ballot envelope for the 2020 general election dated

October 31, 2020. *See* Ex. G-1; Trial Tr. 3/2/2026 at 29:19–30:7. Laiss handwrote on the ballot

his city and state of residence as Ottsville, Pennsylvania. *See id.* at 30:22–32:3. The ballot

contained the signed voter declaration:

> I hereby declare that I am qualified to vote from the below stated address at this
> election, that I have not already voted in this election, and I further declare that I
> marked my ballot in secret. I am qualified to vote the enclosed ballot. I understand
> I am no longer eligible to vote at my polling place after I return my voted ballot;
> however, if my ballot is not received by the county, I understand I may only vote
> by provisional ballot at my polling place unless I surrender my balloting materials
> to be voided to the judge of elections at my polling place.

*Id.* at 31:13-23. The Government also presented Laiss's Statewide Uniform Registry of Electors

("SURE") record from the Bucks County Director of Elections and Voter Registration. *See* Ex.

G-2; Tr. 3/2/2026 at 32:5–34:16. Laiss's general election SURE information was sent to a third-

party ballot mailer on October 2, 2020, and his completed ballot was received on November 4,

2020. *See id.* at 33:10-15. The third-party mailer mailed the ballot to Laiss on October 12, 2020.

*See id.* at 34:1. In addition, the Government presented Laiss's Pennsylvania voter registration,

which listed his name, date of birth, and his parents' address in Ottsville, Bucks County, Pennsylvania. *See* Ex. G-4; Tr. 3/2/2026 at: 36:18–37:15; *see also* Exs. G-5; Tr. 3/2/2026 at 38:11–39:8 (Laiss's signature on Ex. G-4); G-6; Tr. 3/2/2026 at 39:10–42:25 (Laiss's voting history from the Northampton County, Pennsylvania Board of Elections). Laiss canceled his voter registration in Bucks County on July 3, 2023. *See* Ex. G-4.

The Government also introduced Laiss's Polk County, Florida poll book entry for the 2020 general election. *See* Ex. G-3; Tr. 3/2/2026 at 34:17–35:4. The poll book entry contained Laiss's correct name, date of birth, and address at 541 Citrus Drive, Frostproof, FL, Laiss's signature above his name and address in his poll book entry, and the Oath of Voters at top of poll book, which provided:

> [w]ith my signature at the time of voting, I swear or affirm that my name, address, gender, party affiliation, and date of birth, as indicated next to my signature on this page, is correct and that I am a qualified voter in Polk County and have not voted in this election.

*Id.* at 35:10–37:8.

In addition to Laiss's Florida poll book entry, the Government presented Laiss's documents from Florida. First, the Government introduced Laiss's Florida driver's license. *See* Ex. G-7; Tr. 3/2/2026 at 43:2–44:7. The license was issued on August 11, 2020, and expired on June 9, 2023. *See id.* at 43:18-25. It was amended and replaced on September 23, 2020, and issued to the address of 541 Citrus Drive in Frostproof, Florida 33843. *See id.* at 44:1-7. Second, the Government introduced Laiss's Florida voter registration at the Citrus Drive address. *See* Ex. G-8; Tr. 3/2/2026 at 44:8–45:11. His registration, dated August 11, 2020, contained Laiss's name, Citrus Drive address, and signature. *See id.*; *see also* Ex. G-10; Tr. 3/2/2026 at 47:3–48:3 (Laiss's original voter registration in Florida, dated August 11, 2020, listed an address at the Carlton Arms Apartments in Lakeland, Florida). Third, the Government introduced Laiss's Florida

GEICO automobile insurance card. *See* Ex. G-9; Tr. 3/2/2026 at 45:16–46:23. Laiss's GEICO card had an effective date of August 3, 2020, and the address came back at the Carlton Arms Apartments. *See id.* at 46:10-18. Fourth, the Government also introduced parcel details of the Polk County, Florida parcel for 541 Citrus Drive, Frostproof, Florida. *See* Ex. G-11; Tr. 3/2/2026 at 48:4–49:16. There was a quitclaim deed dated August 26, 2020, a warranty deed dated September 24, 2020, and a warranty deed dated January 26, 2022. *See generally id.*; *see also* Ex. G-12; Tr. 3/2/2026 at 49:17–52:16 (presenting the specific history of the parcel of land).

Additionally, the Government played portions of the recorded interview between Laiss and Agents Ahearn and Dvorak, wherein Laiss admitted that he resided in Florida in the fall of 2020, when he mailed in the Pennsylvania ballot to Bucks County election officials and attested on the envelope that he was qualified to vote in Ottsville, Pennsylvania. *See* Ex. G-13, Tr. 3/2/2026 at 26:21–28:1, 61:1–62:6. Agent Dvorak also testified that Laiss admitted that he signed the Pennsylvania voter declaration attesting that he was qualified to vote in Pennsylvania, but then voted in Florida three days later, also signing a poll book proclaiming that he was qualified to vote in Florida and had not previously voted in the 2020 Presidential election. *See id.* at 52:22–54:12. Agent Dvorak testified that Laiss initially told her that he filled in his Pennsylvania ballot and mailed it in before he moved to Florida in August 2020, when he still lived in Pennsylvania. *See id.* at 54:19-22; 87:7–88:9. She then confronted Laiss with the mail-in ballot, pointing out the date of October 31, 2020, and asked him to explain the discrepancy. *See id.* at 54:25–55:3. Agent Dvorak testified that after she showed him the documentary evidence, "he then told—acknowledged the date of October 31st, 2020[,] on the envelope. . . [a]s the date that he mailed it in." *Id.* at 55:4-19; 88:14-17.

After the Government presented its case, Laiss moved for a judgment of acquittal on March 3, 2026, which the Government opposed. *See* Tr. 3/3/2026 at 5:9–18:9, ECF No. 75; *see also* ECF No. 53. The Court reserved a decision on the motion. *See* Tr. 3/3/2026 at 18:10-19.

The defense case began with character witness testimony. Nine of Laiss's friends and family members testified in his favor. *See* Tr. 3/3/2026 at 20:12–23:5 (testimony of Raymond Loscalzo); 23:7–26:25 (testimony of Luke Miorelli); 27:3–29:25 (testimony of Joseph McCans); 30:2–33:2 (testimony of Joseph Gartner); 33:3–36:2 (testimony of Emily Laiss); 36:4–39:16 (testimony of Alan Laiss); 40:14–43:8 (testimony of Raymond Lillie); 43:11–45:13 (testimony of Christine Laiss); 45:14–48:2 (testimony of Megan Lillie). All of them testified, in some variation, that Laiss was honest and law-abiding. *See id.* Some of the character witnesses, including Luke Miorelli, Joseph McCans, Joseph Gartner, and Emily Laiss, confirmed that Laiss was a smart man. *See id.* at 26:7-22 (Miorelli); 29:16-19 (McCans); 32:14-18 (Gartner); 35:22-23 (Emily Laiss).

Next, Laiss testified. He testified that he received a bachelor's degree in business administration from Strayer University. *See* Second[2] Tr. 3/3/2026 at 4:16-20, ECF No. 77. In 2020, Laiss was a claims adjuster with GEICO. *See id.* at 13:13-16. He recounted how he moved to Florida in August of 2020, stayed in an Airbnb, obtained a Florida driver's license, and registered to vote. *See id.* at 16:9–17:18. He purchased a home at 541 Citrus Drive in Frostproof, Florida, and changed his license. *See id.* at 17:21–18:10. He testified that he visited his parents in Pennsylvania from October 17 through November 1, 2020. *See id.* at 21:5-17. When he arrived at his parents' house in Pennsylvania, he saw a mail-in ballot with his former Pennsylvania address,

---

[2]    There are two transcripts from the trial on March 3, 2026. The transcript docketed second, ECF No. 77, is identified herein as "Second Tr. 3/3/2026."

and he questioned "if that was then the ballot that [he] was supposed to fill out." *Id.* at 21:15–22:16. Laiss did not contact any Pennsylvania election officials to discuss the ballot and testified that he thought that he could fill out the ballot because he had requested it earlier. *See id.* at 24:4-15.

Laiss filled out the ballot on October 31, 2020, and voted for "all of the candidates" on his ballot. *Id.* at 22:18–23:2. He acknowledged that he signed and checked the ballot certifying that he lived at the Ottsville address. *See id.* at 36:8-25. He admitted that when he signed his Pennsylvania ballot, he knew he did not live in Ottsville, Pennsylvania. *See id.* at 35:13-19. He also admitted that he signed the Pennsylvania voter declaration. *See id.* at 23:3-15.

Laiss then voted in person in Florida three days later, on Election Day (November 3, 2020), after showing identification and signing the declaration in the poll book, although he claimed that he did not read the voter declaration. *See id.* at 24:19–27:2. On cross-examination, he admitted that he voted twice for President and Vice President in 2020, that he lived in Florida when he mailed his Pennsylvania ballot, and that he intended to (and did) vote in Florida just three days after mailing his Pennsylvania ballot. *See id.* at 37:5–38:8. He testified on direct examination that he did not intend for both votes to count or "to commit fraud against the people of Pennsylvania." *Id.* at 27:14-19. He stated that he did not know that both of his votes had been counted, he did not intend for them to count, no election officials had ever contacted him, and his double voting was an honest mistake. *See id.* at 33:4-19. Yet, on cross-examination, Laiss maintained that he "wanted to cast a vote to ensure that [his] vote was counted." *Id.* at 38:15-18. He testified that he wanted election officials "to accept [his Pennsylvania] ballot and count it, not just for President and Vice President, but for every candidate on the ballot and every question that [he] answered on the ballot." *Id.* at 40:11-23, 41:18-22. Laiss admitted that he also wanted

Florida election officials to accept his ballot. *See id.* at 41:23–42:5. Laiss acknowledged that he knew it was illegal to vote twice in the same election. *See id.* at 35:7-12. When questioned about how election officials would detect the double vote, Laiss conceded that he knew that ballots in Pennsylvania and Florida were secret. *See id.* at 43:2-22. Yet, he claimed on direct examination to have "believed that it would be sorted out," but admittedly never investigated whether there was a system in Pennsylvania to catch a double vote. *See id.* at 34:1-20. Laiss never contacted election officials in Pennsylvania to tell them to cancel his ballot. *See id.* at 48:20-25.

After the close of all evidence and closing arguments, the Court instructed the jury. These instructions included information on, *inter alia*, the mental states of both offenses.[3] The Court instructed that for Count One, the Government was required to prove, beyond a reasonable doubt:

> (1) "[t]hat the defendant cast a ballot that was materially false, fictitious, or fraudulent under the laws of Pennsylvania;" (2) "[t]hat the defendant knew the ballot was materially false, fictitious, or fraudulent;" (3) "[t]hat the ballot was cast in any election for federal office; and" (4) "[t]hat the defendant knowingly and willfully deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process."

Tr. 3/3/2026 at 132:7-25; *see also id.* at 133:1–136:19 (voter fraud, elements of the offense).[4] With regard to the second element, "Knowledge[,]" the Court instructed:

> The second element that the government must prove beyond a reasonable doubt is that the defendant knew the ballot was materially false, fictitious, or fraudulent. An act is done "knowingly" if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider evidence of Mr. Laiss's words, acts, or omissions, along with all the other evidence, in deciding whether Mr. Laiss acted knowingly.

---

[3]    In the addition to the element-specific instructions regarding Counts One and Two, the Court also instructed the jury in accordance with Third Circuit Model Instructions 5.01 (Proof of Required Mental State), 5.02 (Knowingly), 5.03 (Intentionally), and 5.05 (Willfully). *See* Tr. 3/3/2026 at 139:14–142:19.

[4]    The parties agreed upon the elements presented in this Instruction, each citing the statute, 52 U.S.C. § 20511(2), and *United States v. Taylor*, 159 F.4th 1136, 1141 (8th Cir. 2025). *See* ECF Nos. 36, 38.

*Id.* at 134:20–135:3. Regarding the fourth element, "Deprivation of Fair and Impartial Election[,]" the Court instructed:

> the [G]overnment must prove beyond a reasonable doubt that Mr. Laiss knowingly and willfully deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process.  The phrase, quote, deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process, unquote, means that the defendant acted in a manner intended to deceive or mislead election officials into accepting a ballot that the defendant knew to be defective under Pennsylvania law. An attempt occurs if the defendant intended to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process and voluntarily and intentionally carried out some act which was a substantial step toward depriving or defrauding the residents of Pennsylvania of a fair and impartially conducted election process. A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime.

*Id.* at 135:16–136:3.

For Count Two, the jury was instructed that the Government had to prove three elements: (1) "[t]hat a candidate for federal office was on the ballot;" (2) "[t]hat the defendant voted more than once for a candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, or Member of the United States House of Representatives; and" (3) "[t]hat the defendant voted knowingly, willfully and expressly for the purpose of having the defendant's vote count more than once." *Id.* at 136:20–137:24; *see also id.* 137:24–139:13 (voting more than once in a federal election, elements of the offense).[5] Specifically, the third element, "Knowingly and willfully and expressly for the purpose of having the defendant's vote count more than once[,]" stated, "[t]he third element the government must prove beyond a reasonable doubt is that Mr. Laiss voted for President or Vice President more than once

---

[5]    The parties agreed upon the elements presented in this Instruction, each citing *United States v. Salisbury*, 983 F.2d 1369, 1377 (6th Cir. 1993) (citing *United States v. Hogue*, 812 F.2d 1568, 1576 (11th Cir. 1987)). *See* ECF Nos. 36, 38. *See also* 52 U.S.C. § 10307(e).

knowingly and willfully and expressly for the purpose of having Mr. Laiss's vote for President or Vice President count more than once." *Id.* at 138:25–139:9.

The Court provided the jury with a written copy of the jury instructions to have in the jury room during their deliberations. *See id.* at 148:21-23.

During jury deliberations, on March 4, 2026, the jurors asked the Court "Even if the Gov. didn't prove Mr. Laiss had ill intent, is it enough that the act of fraud was committed to render a Guilty Verdict for Count 1? Element 4." Tr. 3/4/2026 at 3:6-10, ECF No. 72. Laiss's counsel said that the Court could either tell the jury "no," or re-instruct the jury on element four. *Id.* at 4:11-15. The Court advised the jury that "[t]he answer is that you must look at the written legal jury instructions that I've given to you, and that is the correct statement on the law, and that is the answer to your question." *Id.* at 7:21-24. A few hours later, the jury convicted Laiss of both counts. *See* Tr. 3/4/26 at 9:23–12:2.

After the jury was excused, the Court denied the first motion for judgment of acquittal, finding that the evidence was sufficient for "a rational trier of fact" to find that Laiss knew "his Pennsylvania ballot was false or defective" and "voted knowingly, willfully, and for the express purpose of having his vote count more than once." *Id.* at 15:13–16:7; *see also* ECF No. 60.

Laiss filed the present Motion on May 13, 2026. *See* Mot., ECF No. 74. Laiss argues that (1) the evidence was insufficient to prove that he acted with the requisite *mens rea* to convict him of both voter fraud (elements 2 and 4) and voting more than once in a federal election (element 3); (2) the verdict was against the weight of the evidence; and (3) the Court erred by failing to orally reinstruct the jurors after they asked a question, thus necessitating a new trial. *See generally id.* The Government filed a Response on June 2, 2026. *See* Resp., ECF No. 79. The Government maintains that the evidence was sufficient to convict Laiss of both counts, the

weight of the evidence favored Laiss's conviction on both counts, and the trial court properly responded to the jury's question. *See generally id.*

## III.    LEGAL STANDARDS

### A.  Motion for Judgment of Acquittal – Rule 29(c) – Review of Applicable Law

Under Federal Rule of Criminal Procedure 29(c), a convicted defendant may file a motion for judgment of acquittal based on insufficient evidence presented at trial. *See* Fed. R. Crim. P. 29(c). Such a motion "may only be granted where the evidence is insufficient to sustain the conviction." *United States v. Little*, 314 F. Supp. 3d 647, 652 (E.D. Pa. 2018) (citation omitted). Courts ask whether the defendant's guilty verdict is supported by substantial evidence. *See id.* Evidence is "substantial" when "a reasonable mind might accept [it] as adequate to support a conclusion." *Shuter v. Astrue*, 537 F. Supp. 2d 752, 755 (E.D. Pa. 2008). When determining whether evidence is substantial, courts "may not weigh the evidence," nor may they "make credibility determinations." *Little*, 314 F. Supp. 3d at 652. Courts must also "consider the evidence in the light most favorable to the government, draw all reasonable inferences in favor of the government, and presume that the jury properly evaluated credibility of witnesses, found the facts, and drew rational inferences." *Id.* (cleaned up). In adjudicating a motion for acquittal, the government's burden is low: it may be met "entirely through circumstantial evidence." *Id.* Indeed, "the verdict must be upheld unless 'no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a doubt.'" *Id.* (*quoting United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)).

### B.  Motion for New Trial – Rule 33 – Review of Applicable Law

Under the Federal Rules of Criminal Procedure, a defendant may move the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P.

33(a). Justice requires a new trial only when errors were made in the first trial, and it is reasonably probable that the verdict was influenced by those errors. *See United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015). In other words, a district court may only grant a new trial if it "believes that there is a serious danger that a miscarriage of justice has occurred." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (cleaned up). A serious danger of a miscarriage of justice occurs when "an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008). Granting motions for new trials is disfavored, and it should only be done in "exceptional" cases. *Id.* "The defendant bears the burden of proving that a new trial ought to be granted." *United States v. Steptoe*, No. 01-429, 2003 WL 22016866, at *1 (E.D. Pa. June 19, 2003), *aff'd*, 126 F. App'x 47 (3d Cir. 2005).

## IV.    ANALYSIS

The Court denies Laiss's Motion under both Rule 29(c) and Rule 33.

As an initial matter, the Court finds that the evidence was sufficient for the jury to convict Laiss on both counts. The Court denies Laiss's Motion pursuant to Rule 29(c).

Additionally, the Court finds that Laiss's conviction was not against the weight of the evidence and that the Court did not err in responding to the jury's question. The Court also denies Laiss's Motion under Rule 33.

### A.    Motion pursuant to Rule 29

#### 1.    Count One

The evidence was sufficient for the jury to convict Laiss of voter fraud. In the Government's case, the jury saw Laiss's records. The exhibits included Laiss's mail-in ballot dated October 31, 2020, wherein he declared that he was qualified to vote in Pennsylvania in the 2020 Presidential general election from an address in Ottsville, Pennsylvania. *See* Ex. G-1.

Alongside the Pennsylvania ballot, the jury saw Laiss's Florida documents. *See* Exs. G-7; G-8; G-9; G-10; G-11; G-12. In August 2020, he switched his license, car, and voter registration to Florida, and purchased automobile insurance there. *See* Exs. G-7; G-8; G-9; G-10. He bought property in Frostproof, Florida on September 24, 2020. *See* Exs. G-11; G-12. Additionally, only three days after completing his mail-in ballot in Pennsylvania, he voted in Florida on November 3, 2020, at which time he attested that he resided in Frostproof, Florida. *See* Ex. G-3. It was reasonable for the jury to conclude, from the physical evidence, that Laiss knew he lived in Florida when he signed the declaration on his mail-in ballot stating that he was qualified to vote in Pennsylvania. The jury could also reasonably have inferred that Laiss's signed voter declaration in Pennsylvania was false. Thus, the physical evidence was sufficient to support the jury's conclusion that Laiss "knew the ballot was materially false, fictitious, or fraudulent," 52 U.S.C. § 20511(2)(B).

Beyond the physical evidence, Agent Dvorak's testimony also supported the verdict. She testified that Laiss provided an inconsistent explanation about when he submitted the Pennsylvania mail-in ballot. Laiss originally told her that he submitted his Pennsylvania mail-in ballot in August 2020, but later conceded that he voted on October 31, 2020, after Agent Dvorak confronted him with the ballot envelope. *See* Tr. 3/2/2026 at 54:19–55:19; 87:7–88:9. Agent Dvorak's testimony lends credence to the inference that Laiss knew that it was illegal to vote in Pennsylvania while he lived in Florida. Additionally, during cross-examination, Lais admitted that he did not reside in Ottsville, Pennsylvania on October 31, 2020. *See* Second Tr. 3/3/2026 at 35:13-19. Yet on that date, he wrote his Ottsville address on his Pennsylvania mail-in ballot envelope, representing that he still lived there, and signed the voter declaration stating, "I hereby declare that I am qualified to vote from the below stated address at this election." Ex. G-1. Laiss

made no attempt to cancel his voter registration despite residing in Florida. For all these reasons, it was reasonable for the jury to conclude that Laiss knowingly cast a false or fraudulent ballot. *See* 52 U.S.C. § 20511(2)(B).

The jury could also reasonably have concluded that Laiss knowingly and willfully deprived the residents of Pennsylvania of a fair and impartial election. *See* 52 U.S.C. § 20511(2). The physical evidence showed that before Laiss completed a mail-in ballot in Pennsylvania, he had already registered to vote in Florida. *See* Exs. G-8; G-10. Just three days after he voted in Pennsylvania, he also voted in person in Florida. *See* Ex. G-3. He used two different addresses, one in Pennsylvania and one in Florida, when voting, each time attesting that he was qualified to vote at that address. *See* Exs. G-1; G-3. Additionally, Laiss testified that he "question[ed]" if he was supposed to complete the Pennsylvania mail-in ballot or to vote in Florida, *see* Second Tr. 3/3/2026 at 22:5-16, but took no steps to contact election officials, *see id.* at 24:2-15. He further testified that he knew each vote was secret but took no steps to investigate whether there was a system that would catch his double vote. *See id.* at 34:1-20; 43:2-17. Rather, Laiss admitted he hoped that the Pennsylvania election officials receiving his ballot would count it. *See id.* at 38:15-18. Specifically, he testified that he wanted election officials "to accept [his] ballot and count it, not just for President and Vice President, but for every candidate on the ballot and every question that [he] answered on the ballot." *Id.* at 41:18-22. Laiss also wanted Florida officials to accept his Florida ballot. *See id.* at 41:23–42:2. The jury could reasonably infer from his actions and inactions, especially when combined with his false and contradictory statements about where he lived and was authorized to vote, that he willfully deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process. *See* 52 U.S.C. § 20511(2).

The evidence was therefore sufficient for the jury to convict Laiss of voter fraud.

### 2.  Count Two

The evidence was also sufficient for the jury to convict Laiss of voting more than once in a federal election.

First, the physical evidence supported the jury's verdict. Three days after sending in his mail-in ballot in Pennsylvania, Laiss went to a polling place in Florida and cast a ballot in person, each time casting a vote for the office of President or Vice President. *See id.* He went to the polling place in Florda despite having declared "I understand I am no longer eligible to vote at my polling place after I return my voted ballot." Ex. G-1. Likewise, the jury saw the voter declarations that Laiss swore to in both Pennsylvania and Florida on which he listed different addresses, which the jury could reasonably infer was evidence of Laiss's intent to avoid detection so both votes would count. Additionally, when Laiss voted in Florida, three days after sending in his mail-in ballot, he declared: "With my signature at the time of voting, I swear or affirm that . . . I . . . have not voted in this election." Ex. G-3. Although Laiss alleged that he did not intend for both votes to count, *see* Second Tr. 3/3/2026 at 33:18-19, the jury found this testimony not to be credible, which is presumed to be correct when considering a motion under Rule 29, *see Little*, 314 F. Supp. 3d at 652.

Second, many of Laiss's character witnesses testified that he was a smart man. *See* Tr. 3/3/2026 at 26:7-22 (testimony of Luke Miorelli); 29:16-19 (testimony of Joseph McCans); 32:14-18 (testimony of Joseph Gartner); 35:22-23 (testimony of Emily Laiss). Beyond character witness testimony, Laiss himself testified that he has a degree in business administration from Strayer University. *See* Second Tr. 3/3/2026 at 4:16-20. In 2020, Laiss was a claims adjuster with GEICO. *See id.* at 13:13-16. A reasonable jury could have concluded that Laiss, as a smart man,

knew that his vote would be counted multiple times if he cast multiple ballots in a federal election. Further, a reasonable jury could have concluded that Laiss knew there was not a communication network between Pennsylvania and Florida election officials that Florida officials would contact Pennsylvania officials to disqualify the Pennsylvania ballot.

Third, in Laiss's own testimony, he admitted that it was illegal to vote twice in the same election. *See* Second Tr. 3/3/2026 at 35:10-12. He admitted that he cast both of his votes by secret ballot. *See id.* at 42:6–45:18. Although he "questioned" whether he should vote twice, *id.* at 21:5–22:16, and suggested that he did not think both votes would count, he did not ask anyone prior to voting where he should vote. He also never tried to rectify the situation after voting twice as he did not contact anyone in Pennsylvania to tell them not to count his ballot, nor did he inform election officials in Florida that he had already completed a mail-in ballot in another state. *See id.* at 48:20-25. A reasonable jury could have concluded that by making no effort to confirm his legal voting location before casting two votes and by making no attempt to rectify the situation once he also voted in Florida, including contacting election officials, especially when coupled with his testimony that he hoped election officials in both states would accept/count his ballots, *see id.* at 38:15-18, 41:18-22, that he intended his vote to count twice. *See* 52 U.S.C. § 10307(e).

Consequently, the evidence was sufficient to support Laiss's conviction on Counts One and Two. Simply put, the Court does not find anything in the evidence to support Laiss's argument that a "rational trier of fact could [not] have found the essential elements of the crime[s] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The Court denies Laiss's Motion pursuant to Rule 29(c).

B.      **Motion pursuant to Rule 33**

The Court also denies Laiss's Motion pursuant to Rule 33 because the verdict was supported by the weight of the evidence, and the Court did not err.

1.  **Weight of the Evidence**

For fundamentally the same reasons stated above regarding the sufficiency of the evidence, the Court finds that the jury's verdict was not against the weight of the evidence presented. Instead, the physical and testimonial evidence support the jury's verdict on both counts.

First, for Count One, the documents showing that Laiss changed his car and voter registration, car insurance, driver's license, and bought a house in Florida in August and September of 2020 provide support for the conclusion that Laiss knew that he lived in Florida in 2020, and also knew that he did not reside in Pennsylvania when he submitted his mail-in ballot. *See* Exs. G-7; G-8; G-9; G-10; G-11; G-12. Accordingly, when Laiss signed the Pennsylvania voter declaration, providing that he was "qualified to vote from the below stated address [in Pennsylvania]" when he lived in Florida, Ex. G-1, this was "materially false, fictitious, or fraudulent." 52 U.S.C. § 20511(2)(B). For these reasons and because Laiss also voted only three days later in Florida, it was reasonable for the jury to infer that Laiss knew his ballot was false and intended to "deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process." *Id.*

Second, for Count Two, it was reasonable for the jury to find that Laiss acted with the requisite intent to vote more than once in a federal election. Initially, Laiss conceded at trial that he voted twice in the 2020 Presidential election. *See* Second Tr. 3/3/2026 at 37:5-6. After completing his Pennsylvania mail-in ballot and declaring "I understand I am no longer eligible to

17
071426

vote at my polling place after I return my voted ballot. . . ," Ex. G-1, Laiss went to a polling place in Florida only three days later and cast a second vote. *See* Ex. G-3. On the first ballot, Laiss attested that he was "qualified to vote from the below stated address" in Pennsylvania, Ex. G-1, but his second ballot, signed only three days later, stated: "[w]ith my signature at the time of voting, I swear or affirm that my name, address [in Florida] . . . is correct and that I am a qualified voter in Polk County and have not voted in this election." Ex. G-3. Additionally, Laiss admitted that he wanted Pennsylvania election officials to accept his Pennsylvania vote, and he wanted Florida election officials to accept his Florida vote. *See* Second Tr. 3/3/2026 at 41:18–42:2. He also never contacted any Bucks County election officials to void his Pennsylvania ballot. *See id.* at 48:20-25. Thus, it was reasonable for the jury to conclude that Laiss "voted knowingly, willfully and expressly for the purpose of having [his] vote count more than once." 52 U.S.C. § 10307(e).

This is not an "exceptional" case which necessitates granting a motion for a new trial, which are rarely granted. *Silveus*, 542 F.3d at 1005. Thus, the Court denies Laiss's Motion pursuant to Rule 33 based upon the weight of the evidence.

### 2. Trial Court Error

To the extent Laiss argues that the Court erred in failing to adequately respond to the jury's question during deliberations, his argument fails. Laiss maintains that the Court should have either answered "no," or reinstructed the jury of the law after the jury asked "Even if the Gov. didn't prove Mr. Laiss had ill intent, is it enough that the act of fraud was committed to render a Guilty Verdict for Count 1? Element 4."[6] 3/4/2026 Tr. at 3:6-10. Instead, the Court told the jury to review the final jury instructions, which it had provided in writing to the jury to use

---

[6]    This argument relates to Count One only.

during its deliberations. *See id.* at 7:14-25; *see also* Tr. 3/3/2026 at 148:21-23. Laiss contends that the "reasonable interpretation of the jury's question was that by 'fraud' they found that he used the wrong address on the mail-in ballot but did so without forming ill intent." Mem. 42. The Government asserts, in opposition, that Laiss's interpretation is wholly speculative and that a more reasonable inference is "that at least one of the jurors did not understand that there cannot be 'fraud' without 'ill intent,' perhaps because that juror (or those jurors) had not fully understood the instructions[.]" Resp. 20. The Government argues that the Court's response to the jury—to review the written instructions—was sufficient because the jury did not come back with additional questions. *See id.* Instead, the jury returned a guilty verdict on both counts. *See id.*

Laiss fails to show that the Court erred in declining to orally reinstruct the jury. Initially, this Court agrees with the Government that Laiss's interpretation of the jury's question is speculative. That counsel interpreted the question differently is precisely why this Court rejected defense counsel's suggestion at trial that the Court should respond with an affirmative "no" to the jury's question. Tr. 3/4/2026 at 4:11-15. In refusing to tell the jury that the answer was no, this Court explained to counsel: "I'm reluctant to give directions or hint about how the verdict should come out on this. . . . I don't want to run the risk of making a misstatement in this scenario. . . ." *Id* at 5:9-14. Reinstructing on only the fourth element of Count One, which was Laiss's alternative suggestion, *see id.* at 4:11-15, was similarly concerning because although element four was contained in a single instruction, this instruction included two states of mind: "knowingly and willfully," which were defined in separate instructions. Since the jury had a complete copy of all these instructions,[7] the Court did not err in telling them to "look at the

---

[7]    There is no suggestion that the written instructions were incorrect.

written legal jury instructions that I've given to you, and that is the correct statement on the law." *Id.* at 7:21-23.

Laiss relies on *Bollenbach v. United States* to support his argument, but *Bollenbach* rests on inapposite facts. Laiss provides the rule that "[w]hen a jury makes explicit its difficulties, a trial judge should clear them away *with concrete accuracy.*" *United States v. DiPasquale*, 740 F.2d 1282, 1290 (3d Cir. 1984) (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–613 (1946)) (emphasis added). In *Bollenbach*, after the jury asked a question about conspiracy, the judge *erroneously* instructed the jury that possession of stolen property shortly after theft in another state creates a presumption of interstate transportation. *See id.* at 609 (emphasis added). The Supreme Court reversed the conviction and held that the jury must be guided by clear, accurate law, not inaccurate presumptions. *See id.* at 612–614.

Here, the Court did not provide an erroneous instruction to the jury. The main concern in *Bollenbach* was the judge's accuracy, not reinstructing the jury. But here, the Court told the jurors to review the existing written instructions, upon which the parties already agreed. *See United States v. Wiltshire*, 568 F. App'x 135, 141 (3d Cir. 2014) (holding, where the trial judge re-read an original jury instruction, that *Bollenbach* "does not require that the District Court proffer the exact response requested by the defendant, especially when the initial jury instructions were legally correct and unambiguously conveyed the requirements . . . "). The jurors resumed deliberations with the written instructions and did not have any more questions, which weighs against Laiss's suggestion that the jury was still confused. *See Gov't of the Virgin Islands v. Nunez*, 424 F. App'x 157, 159 (3d Cir. 2011) (affirming the judgment of conviction because "the jury did not ask any additional questions after the trial judge re-read the elements of the crimes charged" and the record did not "suggest that there was any lingering juror

20
071426

confusion"). A few hours later, the jury returned a guilty verdict on both counts. Laiss does not (and cannot) show that orally reinstructing the jury on the same instruction it received earlier, and had a written copy of, would not have presented a different result. Therefore, the Court finds that it was not error to direct the jury to look at the written instructions. *See Weeks v. Angelone*, 528 U.S. 225, 225 (2000) ("The Constitution is not violated when a trial judge directs a capital jury's attention to a specific paragraph of a constitutionally sufficient instruction in response to a question regarding the proper consideration of mitigating evidence[,]" specifically distinguishing *Bollenbach* because the judge did not provide inaccurate information to the jury); *United States v. Alberto*, No. 22-264, 2025 WL 2200728, at *5–6 (M.D. Pa. Aug. 1, 2025) (denying a Rule 33 motion for a new trial after the trial court referred a "jury to relevant portions of the written instructions which each juror was provided" because "[a] jury is presumed to follow its instructions . . . Similarly, a jury is presumed to understand a judge's answer to its question") (citing *Weeks*, 528 U.S. at 234).

Therefore, the Court denies Laiss's Motion for a New Trial pursuant to Rule 33 because the Court did not err in referring the jury to the written instructions.

## V.   CONCLUSION

For the foregoing reasons, the Court denies Laiss's Motion for Judgment of Acquittal and Motion for New Trial.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
